

**Tagged for Publication**

**ORDERED in the Southern District of Florida on February 24, 2011.**

**John K. Olson, Judge
United States Bankruptcy Court**

___

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov**

**In re**:

Maria Victoria **Osejo,**

Debtor.
_____/

Case No.: 10-31218-BKC-JKO

Chapter 7

**Order Sustaining Chapter 7 Trustee's Objection under 11 U.S.C. § 522(o)(4)
to Debtor's Claimed Homestead Exemption [ECF No. 52]**

Chapter 7 Trustee Kenneth A. Welt has filed an objection to the Debtor's claim of exemptions arguing that the Debtor's claimed state law homestead exemption should be reduced under 11 U.S.C. § 522(o)(4). *See* [ECF No. 52]. Section 522(o)(4) provides that a debtor's homestead exemption shall be reduced to the extent that she (with intent to hinder, delay, or defraud a creditor) converted non-exempt assets into homestead property within ten years before the bankruptcy filing. I conducted a half-day evidentiary hearing on February 17, 2011 and took the matter under advisement.

-1-

*Factual Background*

During the fall of 2009, winter of 2009/2010, and spring of 2010, the Debtor sold non-exempt securities in a string of brokerage transactions. She stopped paying her unsecured and secured obligations in the winter months of 2009/2010, and in the late spring of 2010 she used some of the proceeds from her non-exempt asset liquidations to purchase and improve a home in Pembroke Pines, Florida.

On July 24, 2010, about two months after the Debtor finished converting non-exempt securities into homestead property, she filed for bankruptcy protection. Schedule C was filed contemporaneously with the Debtor's Chapter 7 Voluntary Petition and listed her newly acquired Pembroke Pines home as exempt under Article X of the Florida Constitution and Chapter 222 of the Florida Statutes. Statement of Financial Affairs # 10 (also filed contemporaneously with the petition) did not disclose an April 29, 2010 sale of non-exempt securities which yielded $42,309.13. The Debtor testified at the evidentiary hearing that the proceeds of the April 29th sale were used in the months preceding this bankruptcy filing to improve her newly acquired Pembroke Pines homestead.

On August 31, 2010, the Chapter 7 Trustee conducted the first Section 341 Meeting of Creditors and, rather than conclude the matter, he scheduled a second 341. The Trustee filed a motion to employ counsel on September 13, 2010, conducted the second 341 Meeting of Creditors on September 30, 2010, and the Debtor filed amendments to her schedules and Statement of Financial Affairs on September 30, 2010 (which disclosed, *inter alia*, the April 29th securities sale yielding $42,309.13).

*Discussion*

The Debtor concedes that non-exempt property was converted into homestead property shortly before the bankruptcy filing, but she argues that:

(1) Florida has taken a policy stance with its generous homestead exemption, and Congress has deferred to the states such that the Trustee cannot use 11 U.S.C. § 522(o)(4) to impinge upon the Debtor's state law exemption; and

(2) the Trustee has failed to show requisite intent to hinder, delay, or defraud a creditor.

The Debtor's first argument is easily addressed by a recent (but unfortunately unpublished) decision by Judge Isicoff. *See In re Garcia*, No. 09-33208-LMI, slip op. (Bankr. S.D. Fla. July 6, 2010), *available at* 2010 WL 2697020. *Garcia* cogently and succinctly discusses the interplay between Article X, § 4(a) of the Florida Constitution and § 522(o)(4) of the Bankruptcy Code. In short:

> . . . the virtually limitless Florida homestead law prompted the enactment of section 522(o). . . . the provisions of the Florida Constitution conflict with section 522(o). . . . [and] by virtue of the Supremacy Clause, 11 U.S.C. § 522(o) preempts Florida's constitutional homestead exemption.

*Id.* at *3. The Debtor's first argument is accordingly meritless. Because this Debtor concedes that she converted non-exempt property into homestead property shortly before the bankruptcy filing, the only issue is whether she did so with intent to hinder, delay, or defraud a creditor.

The Debtor did not break down on the stand *a la* Perry Mason at the February 17, 2011 evidentiary hearing and confess her intent to hinder, delay, or defraud creditors. The Trustee did not introduce a serendipitous Facebook posting where the Debtor announced nefarious aims. The Debtor did, however, fail to disclose in her July 24, 2010 sworn filings that she had in April sold non-exempt securities which yielded $42,309.13. She testified at the February 17, 2011 evidentiary hearing that the proceeds of that previously undisclosed April 29th sale were used to improve the homestead she acquired shortly before the bankruptcy filing. She did not amend her Statement of

Financial Affairs to disclose the April 29th sale until the day of her second 341 Meeting of Creditors, after the Trustee had hired counsel to look into the matter. How the Debtor managed to forget about a $42,309.13 securities sale three months before her bankruptcy filing is interesting. It is especially interesting in light of the fact that she used that money to improve a homestead which she claimed as exempt on Schedule C.

There were other nondisclosures as well. The Debtor checked "None" on Schedule B, Item 17 when she was in fact owed $105,000 by her ex-husband. The Debtor checked "None" on Schedule B, Item 12 when she in fact held a 401k account worth $65,036.84 and a vested retirement account worth $133,230.23. Like the $42,309.13 April 29th securities sale, the Debtor only amended her schedules to disclose these assets on the day of the second 341 Meeting of Creditors – after the Trustee hired counsel to investigate. The Debtor argues that liberal amendment policy in bankruptcy negates the suspicious timeline here, but I am familiar with Fed. R. Bankr. P. 1009(a),[1] and the Debtor's general right to amend her schedules during the pendency of her case does not vitiate clear constructive intent to hinder her creditors. Honesty after one is caught is honestly not honesty. The vast majority of Chapter 7 individual cases in this division slide through their first 341 Meeting of Creditors with a Report of No Distribution entered soon thereafter. As skilled as panel trustees may be, they cannot catch everything – especially when Debtors are less than forthcoming. This Debtor's nondisclosures were, as a whole, material and intentional. She gambled, and she lost. That the Debtor amended her schedules after the Trustee smelled fraud, continued the 341, and hired counsel does not exonerate her.

---

[1] *See In re Orozco*, – B.R. –, 2011 WL 462789 (Bankr. S.D. Fla. Feb 7, 2011) (Olson, J.) (citing *In re Martias*, No. 07-20488-BKC-PGH, 2008 WL 906776, at *4-5 (Bankr. S.D. Fla. 2008) (Hyman, J.)).

*Conclusion*

The Trustee's written objection asks that the Debtor's claimed homestead exemption of $50,847.05 be reduced by $40,959.06 under 11 U.S.C. § 522(o)(4). At the evidentiary hearing conducted February 17, 2011, Trustee's counsel reaffirmed that $40,959.06 is the amount requested. I find that the Debtor converted at least that amount of non-exempt property into homestead property during the year preceding her bankruptcy filing, and I find that she did so with intent to hinder creditors. The Trustee's objection at **ECF No. 52** is accordingly **SUSTAINED**.

SO ORDERED.

# # #

*The Clerk of Court is directed to provide copies of this order to all registered interested parties.*